Robert L. Owen and Others, Constituting the Bondholders' Committee for the Republic of Columbia Dollar Bonds, Plaintiffs, *v.* H. Walter Blumenthal and Others, etc., Defendants.*

Supreme Court, Additional Special Term, New York County, March 14, 1938.

*Wise, Shepard & Houghton*, for the plaintiffs.

*Sullivan & Cromwell*, for the defendants.

Church, J. Motion is to strike out the answers and to award judgment pursuant to rules 113 and 114 of the Rules of Civil Practice.

In this action for an accounting the facts are these: In 1928 the municipality of Medellin, Republic of Colombia, issued $9,000,000 of its six and one-half per cent gold bonds, due in 1954. The bonds were issued under what was termed a " Fiscal Agency Agreement," the only parties to this agreement being the munici-

* Affd., 254 App. Div. 853.

pality, as obligor, and the firms of Hallgarten & Co. and Kissell, Kinnicutt & Co., as "Fiscal Agents." These two latter firms were also the underwriters of this issue, the bonds being sold to them with an initial discount of ten and seven-eighths per cent, provided, however, that if the initial offering of the bonds to the public were made at a price which, excluding accrued interest, exceeded ninety-three and five-eighths per cent, the difference was to be divided equally between the municipality and the fiscal agents, who in this capacity were called the "Bankers."

The fiscal agency agreement further provided that the municipality was to pay to the fiscal agents semi-annually, at least thirty days prior to the interest dates, $360,000 for service of the interest and the sinking fund. In this respect the agreement recited (Art. III, § 2, p. 11): "The Municipality recognizes that the Fiscal Agents and each of them or their respective successors are the general representatives of the holders of the bonds and may institute and carry on for them, in the names of the Fiscal Agents or either of them, all actions and proceedings, whatever be the grounds thereof, without being required to produce or possess any of the bonds in any court or elsewhere or to prove their agency for or authority from said bondholders to represent them."

The municipality agreed to make monthly deposits of one-twelfth of the above sums in a bank in Medellin chosen by agreement with the fiscal agents for the account of the service of the loan and agreed to cause the depositary to remit such sums to the fiscal agents at least thirty days prior to the interest dates. All remittances received by the fiscal agents for the service of the loan were to be applied by them (a) to the payment of interest, and (b) for sinking fund purposes.

The agreement further stated (Art. V, § 8, p. 32): "All moneys at any time constituting a part of the sinking fund, except moneys reserved and set aside for the redemption of Bonds, pursuant to the provisions of this Article V [the exception covered the situation where bonds selling over par had been redeemed by lot] shall be held by the Fiscal Agents for the benefit of the holders of the Bonds secured hereby."

Upon default the fiscal agents were authorized to apply any moneys then in the sinking fund, except moneys reserved for bonds redeemed by lot, to the payment of interest.

The municipality further agreed (Art. V, § 9, p. 33) to maintain at all times on deposit with the fiscal agents a special reserve fund, which as originally constituted was to amount to $360,000, or six months' debt service. The fiscal agents were permitted to invest this sum in the municipality's seven per cent bonds of 1926, bonds

of the Republic of Colombia, or any department thereof, bonds guaranteed by the Republic of Colombia, or any bonds issued by the United States of America. If payments on account of debt service ceased, the fiscal agents were authorized to apply this special reserve fund to the debt service (p. 33).

Article VI, page 35, of the agreement recited: " The Municipality hereby covenants and agrees with the Fiscal Agents for the benefit of the holders severally and respectively of the Bonds " that it would maintain an agency at the office of the fiscal agents in New York, that it would furnish to the fiscal agents quarterly statements and any other information such fiscal agents might reasonably request relating to its financial condition, such information to be kept by the fiscal agents for inspection by any holder of bonds.

The agreement further provided (Art. VII, § 2, p. 39) that upon default the fiscal agents, or either of them, " may and, upon the written request of holders of a majority in amount of the Bonds issued hereunder and then outstanding shall, by notice in writing * * * declare the principal and interest on all the Bonds then outstanding to be due and payable immediately," and further provided (p. 40), " If an event of default shall occur, the Fiscal Agents may proceed to protect and enforce their rights and the rights of the holders of the Bonds, secured by this Agreement, and to institute and prosecute such judicial or extrajudicial proceedings as the Fiscal Agents, being advised by counsel, shall deem most effectual to enforce any of their rights or the rights of holders of the bonds secured by this Agreement." And, again, provided (p. 40): " The Fiscal Agents are hereby appointed the general representatives of the holders of the Bonds to deal with the Municipality and to exercise all other powers conferred upon the Fiscal Agents by this Agreement, and the Municipality hereby acknowledges and recognizes such appointment. The Municipality agrees that the Fiscal Agents, as such general representatives of the Bondholders, may exercise all and any of the remedies conferred upon the Fiscal Agents by this Agreement, and may institute and prosecute, on behalf of the holders of the bonds and in the name of the Fiscal Agents all judicial proceedings."

For their services the fiscal agents were, in addition to their fees as underwriters, to receive from the municipality one-fourth of one per cent of all interest paid and one-fourth of one per cent of the face amount of all bonds redeemed or otherwise retired or paid.

The agreement further provided (Art. X, § 9, p. 46): " Each of the Fiscal Agents and the Bond Registrar and Authenticating Agent shall be answerable to the Municipality or to the Bondholders only for its own failure to exercise good faith or for gross negligence."

Default occurred in the payment of interest due in December, 1931. With the exception of a slight amount applied on account of the interest payment due on that date, no further payments have since been made by the fiscal agents. One of the original underwriters and fiscal agents, Kissell, Kinnicutt & Co., was succeeded as fiscal agent on January 2, 1932, by Kidder, Peabody & Co. Kissell, Kinnicutt & Co. is not a defendant herein, the two defendants being the original and continuing fiscal agent, Hallgarten & Co., and the successor fiscal agent, Kidder, Peabody & Co. The defendants have never accounted for their acts. They admit that the defendant Hallgarten & Co. has in its possession cash and $412,000 in face amount of securities purchased from the special reserve fund.

There is no real factual dispute in this case. The defendant Hallgarten & Co. claims that it should not be required to account because the fiscal agents were " fundamentally and primarily the appointed agents of a foreign municipality, *i. e.*, the City of Medellin;" that they were merely authorized to act for the bond-holders, but that " such authorization, however, imposes no trust or duty but merely an authority which might be invoked " (citing art. X, § 3, p. 44); that as regards the sinking fund payments, " the duty of the fiscal agent was to the Municipality of Medellin;" that at no time and in no manner could any bondholder assert that it had any interest in the sinking fund moneys as such, but only in the fact that such sinking fund moneys were duly applied to the purchase of bonds for the sinking fund; that for such moneys the fiscal agents are accountable to the municipality of Medellin; that as to the special reserve fund, even though the agreement provided that in the event of default the fiscal agents could apply this fund to the bond service, " by the terms of the agreement it was not made obligatory for it to be so employed."

The position of this defendant is untenable and unconscionable. In normal financing there are three parties, an obligor, an under-writer, who might also be the agent of the obligor and guarantor of the issue, and an independent trustee. The enlightened equitable conscience is averse to arrangements by which the so-called inde-pendent trustee surrounds itself with exculpatory barriers which would protect it from everything but larceny. Here, however, we have a situation where, if we accept the defendants' version, there was no trustee or fiduciary. The same parties acted as underwriters and agents of the obligor and then prescribed for themselves the duties which would be fulfilled by a trustee. They had themselves appointed as the representatives of the bondholders, and provided for all remedies as such bondholders' representatives. They now

attempt to claim that they owe no duty to the bondholders, but that the trusteeship is a cloak which they may or may not don at will, being certain, however, that no one else may wear it. They receive payment as underwriters and also receive the moneys which should be paid to an independent third party as trustee.

They now have moneys and property belonging to the bond-holders. They are the only ones who can take any action on behalf of all the bondholders. When asked to account for these moneys they claim they are agents of the obligor and owe no duty to the bondholders. They cannot claim that this property, after six years of default, could possibly belong to the municipality, but they seek to assume some status in which they are nothing but a debtor of the municipality, answerable to the municipality alone or in some vague action to be brought by the bondholders as " contract beneficiaries." It is not without significance that the government of Colombia, whose approval is an integral part of the fiscal agency agreement, recites that this agreement (referred to at page 52 as " Contracts of Trust and Fiscal Agency ") contains " satisfactory provisions regarding the services of the Trustee " (p. 56). The government of Colombia was under no inhibitions as to character-izing the role which these fiscal agents had assumed, and the fiscal agents, by making the government's approval a part of the agreement, accepted the characterization.

The cases cited to defeat this accounting are not in point. They are readily distinguishable, e. g., where it was clear that the relationship of the defendant was only a debtor-creditor relationship, or where the creditor could at any time revoke the authority given. But in this case the very essence of the agreement and the internal evidence thereof show clearly that these fiscal agents occupy a sufficiently fiduciary relationship to the bondholders to require them to account for moneys and property which certainly do not belong to them or to the municipality.

The defendants, constituting the firm of Kidder, Peabody & Co., resist this application on the ground that, although they admittedly succeeded Kissell, Kinnicutt & Co. as one of the fiscal agents, they assumed no liabilities or responsibilities as to any matters prior to their succession. They do not recite how they became successor fiscal agents. The only method prescribed in the agreement is that they be " successors in business " of their predecessor. The accounting will include an accounting not only of property received by the fiscal agents, but all their acts or omissions which may have affected the failure to receive more or may have caused a diminution of the funds held. Also, the plaintiffs are entitled to know how, under the agreement, Kidder, Peabody & Co. became successor fiscal agents without assuming liability.

It may be that the accounting will reveal no liability on the part of these defendants, either by reason of a careful and prudent administration of their fiduciary responsibility to the bondholders or by virtue of the exculpatory provisions in the agreement itself; but these are matters to be determined upon the accounting.

It appears from the answering papers that one of the defendants, a partner of Hallgarten & Co., has died since the institution of this action. The action may proceed against the survivors under section 85 of the Civil Practice Act, or, if the plaintiffs are so advised, proceedings may be instituted for the purpose of substituting his personal representative.

Accordingly, the motion is granted. Settle order providing for the entry of an interlocutory judgment directing the defendants to file their accounts herein and referring the same to a referee to hear and to take and state the account and to report with all convenient speed.